Emeterio CUESTA, also known as
Emeterio Cuesta Campillo,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15563.

United States Court of Appeals
Fifth Circuit.

March 7, 1956.

William Eston Henson, Jr., John P. Corcoran, Jr., Tampa, Fla., Brown, Brown & Corcoran, Tampa, Fla., for appellant.

Joseph P. McNulty, Asst. U. S. Atty., Vernon W. Evans, Jr., Asst. U. S. Atty., Tampa, Fla., James L. Guilmartin, U. S. Atty. for the Southern District of Florida, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The appellant, Emeterio Cuesta, sometimes known as Emeterio Cuesta Campillo, was born in Spain. As required by the Nationality Act of 1940, 8 U.S.C.A. former § 728,[1] he made an Application for Registry of an Alien on August 19, 1952. In the application he stated that he arrived in the United States in 1921 from Havana, Cuba, on a motor boat which smuggled him in along with a cargo of liquor. The appellant's oath was taken before C. G. Yeager, below whose signature was written "Act. Natz. Exam.". This abbreviation stood for "Acting Naturalization Examiner". His official position was that of Investigator in the Immigration and Naturalization Service. Cuesta spoke no English. The questions on the application were read and explained to him in Spanish by Mercedes Favata, an interpreter in the employ of the Government in the Immigration and Naturalization Service. Mrs. Favata transcribed the answers in English and at the end checked with him for accuracy and made several corrections. Mrs. Favata was not then or thereafter expressly sworn accurately to interpret and translate Cuesta's statements and testimony. When the Application was completed, signed and sworn to by Cuesta he was examined by C. G. Yeager who identified himself, advised Cuesta that a hearing was being held on the Application for Registry, and warned him that what he said might be used against him. The examination was conducted by C. G. Yeager through Mrs. Favata as interpreter and was taken down in shorthand and transcribed by a stenographer. At the beginning of the hearing Cuesta insisted that the statement that he came to the United States in 1921 was true. The questions continued for some time, and then followed these questions and answers:

"Q. Do you deny that this is your signature contained on this application? A. Yes, that is not my signature.

"Q. Do you wish to change your testimony in any way? A. What I want is to have my legal papers and be an American citizen.

"Q. Do you wish to change your testimony in any way? A. As long

1. Now Immigration and Nationality Act, 8 U.S.C.A. § 1230.

as they fix my papers I would do anything.

"Q. Do you wish to change your testimony in any way? A. Can you just forget everything I put down? * * * It was over 1924 when I came in.

"Q. When did you come to the United States? A. In 1927.

"Q. On what date in 1927 did you arrive in the United States? A. The date I am not sure.

"Q. How did you arrive in the United States? A. By launch.

"Q. Were you smuggled into this country? A. Yes.

"Q. On what vessel? A. I don't know the name of the launch."

The appellant was indicted under 18 U.S.C.A. § 1015, for knowingly making a false statement as to his entry into the United States. He waived a jury and was tried by the court. There were tried with him three others who had, it was charged, sworn falsely in Cuesta's behalf in connection with his Application for Registry. Only Cuesta is before us in this appeal. C. G. Yeager, Mercedes Favata, and others, including Sebastian Gorostizia and S. J. Gonzales, testified for the Government. Sebastian Gorostizia, after being sworn, said that he was from Havana, Cuba, where he was Sub-secretary or Under-secretary in Havana of Centro Asturiano, a fraternal benefit organization. He testified that he was custodian of the records of the organization, that he had searched for and found, and on the stand produced what appeared to be an application of Emeterio Cuesta Campillo, dated in 1927, for membership in Centro Asturiano. This application showed a Havana address as the residence of Cuesta. The witness had only been with the organization since 1935, did not know Cuesta, and could not identify his handwriting. Gonzalez testified that he was and had been since 1920, the Secretary of Centro Asturiano in Tampa. He stated that an Emeterio Cuesta Campillo was a member of the

society in Tampa, having transferred from Havana. He gave the inscription number of Cuesta's membership as being 54,700 which is the same number that Gorostizia said had been assigned to Cuesta in Havana. Cuesta, in his sworn statement given before C. G. Yeager, had said that Carlos Villar, a friend, had "enrolled in the Centro Asturiano for me".

A. J. Mixson, Officer in Charge, Immigration and Naturalization Service at Tampa, Florida, produced the personnel records of his office relating to C. G. Yeager. Among these was a document showing the promotion in 1949 of Mr. Yeager from Immigrant Inspector to an Investigator and another which designated him as an Acting Naturalization Examiner. These were introduced in evidence and were properly received. 28 U.S.C.A. § 1732; Finnegan v. United States, 8 Cir., 1953, 204 F.2d 105, certiorari denied 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347, rehearing denied 346 U.S. 880, 74 S.Ct. 118, 98 L.Ed. 387.

The court found the appellant guilty, sentenced him to imprisonment for one year and to pay a fine of $500.00, with a proviso that upon payment of the fine within thirty days the prison term should be suspended. Motions for acquittal, for a new trial and arrest of judgment were made and denied. From the adjudication of guilt Cuesta appeals. He urges, as points upon which there should be a reversal, that because the interpreter was not sworn the statement was that of the interpreter, and Cuesta's statement was not under oath; that the capacity of C. G. Yeager to administer an oath in an Alien Registration proceeding was not shown; and that there is no corroboration of appellant's extra-judicial admission of the falsity of the Application.

Mercedes Favata, the interpreter who, as such, participated in the preparation of the sworn Application, was an employee of the Government in the Immigration and Naturalization Service. The statute, Nationality Act of 1940, § 327(b), 8 U.S.C.A. former §

727(b) [2] authorizes the making of rules and regulations. Under this power a regulation was adopted providing:

"Where the services of an interpreter are found necessary in the conduct of a hearing, the interpreter, if not an employee of the Service, shall be sworn to interpret and translate accurately". 8 C.F.R. 1949 ed. § 150.6(f).

These regulations are binding and have the force of law. Chun Shee v. Nagle, 9 Cir., 1925, 9 F.2d 342. Since the interpreter was in the Service it was not necessary that she be sworn as such. It seems that, absent such regulation, it is not necessary that an official interpreter take a separate oath in each particular proceeding. Lee Sim v. United States, 2 Cir., 1914, 218 F. 432.

■ We find no merit in the contention that C. G. Yeager as Acting Naturalization Examiner, had no power to administer the oath by which the appellant falsely swore to the Application for Registry. By a departmental regulation it was provided:

"All patrol inspectors, immigrant inspectors, naturalization examiners, and officers of the Immigration and Naturalization Service of a higher grade are hereby authorized to administer oaths and to take depositions without charge in matters relating to the administration of the naturalization and citizenship laws." 8 C.F.R. 1949 ed. § 60.26.

Since Mr. Yeager held an office of a higher grade than Immigrant Inspector, having been promoted from that office to that of Investigator, he was authorized to administer an oath to appellant. We think it immaterial whether he designated himself as Investigator or as Acting Naturalization Examiner. No prejudice could have resulted to the appellant from the use of either title.

■ A conviction for making false statements under oath must be reversed unless there be evidence in addition to the extra-judicial admission of the defendant as to falsity. We conclude that the requisite corroboration is not present here and so concluding, the judgment must be reversed. The rule as to the proof required in perjury cases is thus stated:

"It is the general rule that to authorize a conviction for perjury the falsity of the statement alleged to have been made by the defendant must be established either by the testimony of two independent witnesses, or by one witness and independent corroborating evidence which is inconsistent with the innocence of the accused. [Citing cases.]

"It is also generally held by the courts, in cases where the defendant has by opposite oaths affirmed and denied the same fact, that mere proof of the defendant's contradictory sworn statements without more is not sufficient to sustain a conviction for perjury. [Citing cases.]

"A third situation which has given the courts some concern is where, as here, the subsequent inconsistent or contradictory testimony is accompanied by an admission that the testimony previously given was false. In People v. Burden, 1850, 9 Barb., N.Y. 467, the defendant had made two contradictory statements under oath and in the second he had expressly acknowledged the intentional falsity of the first, and it was held that this acknowledgment was sufficient to establish the perjury of the first without further evidence. However, practically all of the authorities which have had occasion to consider the question have refused to follow People v. Burden, and have held that an admission in the second statement of the falsity of the first will not take the case out of the general rule that a conviction for perjury cannot rest upon the defendant's

---

2. Now Immigration and Nationality Act, 8 U.S.C.A. § 1443.

contradictory statements alone. [Citing cases.]" McWhorter v. United States, 5 Cir., 1952, 193 F.2d 982, 983.

 The conviction cannot be sustained unless there is corroboration of the appellant's contradiction of his sworn statement in the Application for Registry. The Government attempted to meet the corroboration requirement by the introduction of the record of Centro Asturiano in Havana for the purpose of showing that Cuesta was in and resided in Cuba in 1927. The document was admitted under the Business Records Act, 28 U.S.C.A. § 1732. The purpose of the law was to render unnecessary the strict requirements of the common law for producing as witnesses every person who had anything to do with the record in order to prove its authenticity. Stegemann v. Miami Beach Boat Slips, 5 Cir., 1954, 213 F.2d 561. Whether the evidence was sufficient to show that the document from the files of the Cuban fraternal benefit society was made in the regular course of its business may be doubtful, but this we need not determine. Nor need we consider whether the act applies to the business records of organizations outside the United States.

It is unnecessary for us to resolve the question of whether a written statement of the appellant, inconsistent with his sworn statement, would provide the required corroboration when, under McWhorter v. United States, supra, a further oral statement would not do so. It is enough that we find the instrument insufficient as corroborative proof. All that is apparent is that someone signed the name of the appellant to an application in 1927. The witness who produced the document and the only one who testified about it did not know Cuesta nor was he familiar with his handwriting. Cuesta himself, in his statement before the Acting Naturalization Examiner, said that another had done it for him. If the document be admissible, it still does not put the appellant in Havana in 1927 or otherwise support his extra-judicial admission of the falsity of the Application.

Being of the opinion that the motion for judgment of acquittal should have been granted, the judgment of conviction is

Reversed.